1  Phil S. Flemming (#014778)
   YEN PILCH ROBAINA & KRESIN PLC
2  6017 North 15th Street
   Phoenix, Arizona 85014
3  Telephone: (602) 682-6450
   Facsimile: (602) 682-6455
4  psf@yprklaw.com

5  Attorneys for Plaintiff

6              IN THE UNITED STATES DISTRICT COURT

7                    DISTRICT OF ARIZONA

8  Debbie A. Peters, an individual,            No.

9             Plaintiff

10 v.                                          **COMPLAINT**

11

12 Milestone Technologies, Inc., a California
   corporation,                               **Jury Trial Demand**

13            Defendant.

14

15

16        Plaintiff, Debbie A. Peters (Ms. Peters or "Plaintiff"), by undersigned counsel, for

17 her Complaint against Defendant Milestone Technologies, Inc., a California corporation

18 conducting business in Arizona ("Milestone" or "Defendant") alleges as follows:

19                        **NATURE OF ACTION**

20        1.    This is an action seeking remedies, including money damages and equitable

21 relief, for violations of: Title VII, 42 U.S.C. §§ 2000, *et seq*. as amended; the Equal Pay

22 Act and Lilly Ledbetter Fair Pay Act, 29 U.S.C. §§ 206, 262 and 42 U.S.C. § 2000e-5(e)(3);

23 the Arizona Civil Rights Act ("ACRA"), A.R.S. §§ 41-1401, *et seq*.; and the Arizona

24 Employment Protection Act, A.R.S. § 23-1501.  Plaintiff's legal claims arise out of her

25 employment with Defendant.

26               **PARTIES, JURISDICTION AND VENUE**

27        2.    Ms. Peters is a United States citizen residing in Pima County, Arizona.

28        3.    Defendant Milestone is a California corporation, conducting business in the

                              1

State of Arizona.   Defendant Milestone's headquarters office is located in Fremont, California.

4.      Defendant employed Plaintiff during times relevant to this action.

5.      At all relevant times, Defendant employed more than fifteen (15) employees.

6.      At all relevant times, Defendant caused events to occur in Arizona which give rise to the claims being asserted herein.

7.      Jurisdiction before this Court is invoked pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, specifically, Title VII, 42 U.S.C. §§ 2000, *et seq*., the Civil Rights Act of 1991, 42 U.S.C. § 1981a, the Equal Pay Act and the Lilly Ledbetter Fair Pay Act, 29 U.S.C. §§ 206, 262 and 42 U.S.C. § 2000e-5(e)(3).

8.      This Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, authorizes it to exercise jurisdiction over Plaintiff's state law claims under the Arizona Employment Protection Act, A.R.S. § 23-1501.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the events alleged to be unlawful giving rise to the claims occurred in this District.

10.      Plaintiff timely filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue from the EEOC on or after March 23, 2021.

11.      This action is timely commenced within 90 days of Plaintiff's receipt of the Notice of Right to Sue.

### FACTUAL BACKGROUND

12.      Plaintiff incorporates all prior paragraphs in this Complaint as though fully set forth herein.

13.      Plaintiff has nearly 30 years of experience in all levels of the human resources field, including director roles.

14.       For the most recent ten or more years, Plaintiff focused on compensation and benefit matters within the human resources profession.

15.     Plaintiff began employment with Defendant during April 2019 as the Senior Manager of Total Rewards.

16.     As Senior Manager of Total Rewards, Plaintiff handled all benefit plans, compensation plans, and set up the Human Resources system.  She had authority to develop and implement decisions at her leadership level and had responsibility over approximately fifteen employees reporting to her.

17.     Arlene LaBorde, Defendant's Chief People Officer, directly supervised Plaintiff's work.

18.     Defendant's Chief Financial Officer Anish Shah also participated in supervision of certain aspects of Plaintiff's work with respect to workers' compensation, benefit funding, payment matters, and payroll functions.

19.     As Plaintiff became familiar with Defendant's operations and structure, she realized she was performing job duties substantially equivalent to Director-level positions.

20.     Although Plaintiff's work and supervisory level merited the title of Director and Director-level compensation, Defendant assigned her position a lesser title and compensation significantly less than that of a Director.

21.     Plaintiff generally worked well under the supervision of Ms. LaBorde and willingly assumed additional responsibilities to step up and help the department and company to succeed.

22.     Plaintiff reviewed previous records as part of her job and learned that Defendant previously had improperly deducted sums for group term life insurance. She and Ms. LaBorde discussed how best to respond to the errors.

23.     In October 2019, Defendant assigned Plaintiff to submit data for the audit to be performed on workers' compensation.

24.     At a meeting on October 14, 2019, Plaintiff, Mr. Shah, and Ms. LaBorde discussed the workers' compensation coding and the new jobs to add and update in the ADP system.

25.     While reviewing the data, Plaintiff discovered misclassification of some of

Defendant's employees for workers' compensation coverage, reported the issue to Mr. Shah during the meeting, and asked him to explain the reasoning for those classifications.

26.     The misclassified codes for some of Defendant's employees resulted in less costly codes for insurance coverage which concerned Plaintiff that knowingly misclassifying could constitute insurance fraud.  She reported the issue to management.

27.     Mr. Shah became annoyed at Plaintiff's discovery of misclassifications in the previous file dated March 27, 2018 but he told Plaintiff to make the corrections and he would retain final approval.

28.     Mr. Shah complained to Ms. LaBorde about Plaintiff's coding of the misclassified employees and was displeased that Plaintiff's corrections could increase the insurance premiums.

29.     In December 2019, Defendant interviewed candidates to fill two different positions within the Human Resources Office.

30.     Plaintiff identified a qualified female candidate for one of the two positions but Ms. LaBorde indicated a female would not hold the respect of male employees in India, so a male candidate was hired.

31.     For the second Human Resources position, Defendant also hired a male.

32.     Plaintiff was anxious and distressed over the security of her job due to Defendant's discriminatory statements and actions favoring male coworkers.

33.     During spring of 2020, Defendant faced the global pandemic and its impact on the workplace.

34.     During a Zoom meeting Plaintiff held on March 2020, Mr. Shah barged into the meeting, unannounced and disrespectfully criticized Plaintiff and the team members concerning short-term disability tax information they had provided him.

35.     The March 2020 Zoom meeting is one example of many times Mr. Shah unprofessionally demeaned and criticized Plaintiff, publicly blaming her for errors and inefficiencies caused by others in Mr. Shah's team.  Plaintiff was humiliated.

36.     Plaintiff learned from Ms. LaBorde that Mr. Shah was repeatedly, unfairly

criticizing Plaintiff, diminishing the respect and authority she held among her team and colleagues.

37.     After the March 2020 Zoom meeting, Ms. LaBorde, who had been present, and Plaintiff discussed that Mr. Shah was incorrect, unprofessional, and difficult to work with.

38.     Defendant failed to complete Plaintiff's annual performance review due in April 2020, however, Ms. LaBorde sent a congratulatory work anniversary email thanking Plaintiff for all her work and handling many projects.

39.     Plaintiff received regular compliments from supervisors, other than Mr. Shah, about her and her team's performance, including but not limited to the March 2020 commendations concerning the processing of Open Enrollment.

40.     On April 24, 2020, Plaintiff reported to her supervisor Ms. LaBorde that she was performing work substantially equal to that of male colleagues who received the title of Director with significantly higher salary, identifying a newly hired male as one example.

41.     Plaintiff received no response to her email from Ms. LaBorde.

42.     A couple of weeks later, on May 10, 2020, Defendant's management told Plaintiff that the payroll operations were being transferred from Mr. Shah's supervision to her supervision after major problems had occurred.  This added five additional employees to Plaintiff's supervision.

43.     Mr. Shah resented Plaintiff, a female, taking over the payroll he had handled, as an embarrassment to him.

44.     Plaintiff understood that she was to put out the urgent fires with the team and she discussed her recommendation of disciplinary action of two employees.  Management declined to implement any discipline.

45.     Plaintiff reviewed the employees among the payroll operations and realized two male employees performed the same duties but had different job titles and compensation which she brought to management's attention to address.

46.     Problems among other employees assigned to Plaintiff's supervision led Ms.

LaBorde to criticize Plaintiff during early summer of 2020, and Plaintiff reminded Ms. LaBorde that management directed her to place those unqualified or incompetent employees in those positions against Plaintiff's recommendations.

47.     During June 2020, Defendant began the process of hiring approximately one thousand new employees to serve as COVID-19 screeners for clients during the pandemic.

48.     Mr. Shah directed Plaintiff and her team to have the new employees classified and coded as clerical workers for workers' compensation coverage, at the low premium rate, but Plaintiff responded that it would be deceitful and could risk coverage by the insurance carrier.

49.     In response to Plaintiff's diplomatic, reasonable concerns about compliance with insurance requirements and workers' compensation laws, Mr. Shah angrily reversed assigning the classification to Plaintiff's team so he could take control.

50.     On June 22, 2020, Mr. Shah emailed notice that his team and one of the insurance carriers had completed classifying the COVID-19 screeners as clerical staff.

51.     In response to Mr. Shah's self-congratulatory email, Plaintiff emailed sarcastically with Ms. LaBorde and another colleague that she hoped this "crowning" achievement would result in Mr. Shah and his selected employee handling all workers' compensation matters in the future.

52.     During late June and into July 2020, Mr. Shah was angry and created more friction and anxiety for Plaintiff, belittling her in the presence of others and making unfavorable decisions about her work, setting her up for failure.

53.     In late-July 2020, the Ohio workers' compensation carrier (one of two state monopoly carriers) questioned Defendant's classification of screeners as clerical employees, consistent with the precise concerns Plaintiff raised previously with Mr. Shah.

54.     On receipt of the notice from the Ohio workers' compensation carrier, Plaintiff informed Mr. Shah who angrily told her to delay responding to the State of Ohio.

55.     August 4, 2020, Defendant notified Plaintiff that the U.S. payroll function under her supervision would be relocated to an offshore site by year-end.

56.    During mid-August 2020, Plaintiff recommended to recommend discipline of personnel who had missed deadlines and follow-up on payroll functions, but Ms. LaBorde informed her that those employees had filed a pre-emptive grievance against her so discipline would not be imposed.

57.    On October 16, 2020, Ms. LaBorde informed Plaintiff of negative feedback on her performance from management, but provided few specifics, saying management had simply lost confidence and Plaintiff would not be able to recover her reputation.

58.    The next week, Ms. LaBorde instructed Plaintiff to begin the transition of the payroll function to the offshore site but to maintain one young, male employee in the U.S. payroll function.  Two female women of color, over age 40, working in the payroll function were slated to be discharged.

59.    The retention of the young, male employee is an example of Defendant's regular favoritism toward male employees in contrast to treatment of female employees.

60.    November 13, 2020, Defendant delivered notice to Plaintiff of her termination, with the paperwork falsely stating the employment status changed due to "Mutual Agreement."

61.    Two days later, Ms. LaBorde sent Plaintiff a proposed separation agreement.

62.    Defendant terminated Plaintiff's employment November 13, 2020.

63.    Subsequent to her termination, Plaintiff has learned that Defendant hired a male, Mr. Drayer, to replace her, however, he received the title of Senior Director and was given higher compensation.

64.    Defendant had refused or failed to give Plaintiff the Director title and significantly higher compensation that would have been equivalent to her colleagues who performed substantially the same work duties.

65.    Plaintiff is aware of Mr. Drayer's qualifications after reviewing them for a previous job.  Plaintiff's qualifications are superior to those of Mr. Drayer.

66.    Plaintiff sought out opportunities for training and advancement, developing

7

her professional career with the Defendant company.

67.    As a result of Defendant's wrongful discrimination and retaliation against Plaintiff, she has suffered and will continue to suffer damages, to be proven at trial.

68.    Plaintiff has suffered damages as a result of the Defendant's wrongful discrimination and retaliation, including back pay, benefits, front pay, emotional distress, in addition to harms to reputation and professional opportunities.

## LEGAL CLAIMS

### Claim One

### Violations of Title VII of the Civil Rights Act of 1964, as amended

69.    Plaintiff incorporates all prior allegations as though fully set forth herein.

70.    Title VII, 42 U.S.C. §§ 2000e, *et seq*. prohibits discrimination on the basis of sex in employment.

71.    Defendant's actions as alleged constitute unlawful discrimination on the basis of sex in violation of Title VII, 42 U.S.C. § 2000e-2(a).

72.    Defendant has unlawfully subjected Plaintiff to discrimination and disparate treatment based on her sex, contrary to the prohibitions of Title VII.

73.    Title VII, 42 U.S.C. § 2000e-3, also prohibits retaliation against an employee who has opposed unlawful employment practice or engaged in protected activity under Title VII.

74.    Defendant's actions alleged above constitute unlawful discrimination and retaliation for Plaintiff's activities of opposing discrimination and retaliation, protected under Title VII.

75.    As a result of the Defendant's unlawful conduct, Plaintiff has been deprived of equal employment opportunities, has been subjected to adverse employment actions and was terminated on the basis of her sex and due to unlawful retaliation.

76.    Defendant acted intentionally with malice or reckless indifference to Plaintiff's protected rights under Title VII and failed to take effective corrective action.

77.    As a result of Defendant's discrimination and retaliation, Plaintiff has

suffered damages, including lost wages and benefits, lost future wages and benefits, retirement benefits, harm to her profession and reputation, emotional distress, anxiety, and more, as permitted by the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

78.     Plaintiff also seeks punitive damages based upon the egregiousness of Defendant's conduct, to the extent permitted by law.

79.     Plaintiff seeks recovery of her attorneys' fees and costs.

## Claim Two

### Violations of Equal Pay Act and Lilly Ledbetter Fair Pay Act

80.     Plaintiff incorporates all prior allegations as though fully set forth herein.

81.     Pursuant to the Equal Pay Act, 29 U.S.C. § 206(d)(3):

> An unlawful practice occurs, with respect to discrimination in compensation . . . when a discriminatory compensation decision or other practice is adopted, when a person becomes subject to a discriminatory compensation decision or other practice, or when a person is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

82.     A person aggrieved under the Equal Pay Act may file suit for jury trial to recover amounts owed.  29 U.S.C. § 626(d)(3).

83.     Discrimination in compensation also gives rise to a right to sue for back pay under 42 U.S.C. § 2000e-5(e)(3).

84.     The Equal Pay Act and federal laws prohibiting discrimination in compensation also make it unlawful for an employer to retaliate against an employee for protected activities of opposing such discriminatory practices or complaining about the discriminatory compensation practice.

85.     Defendant discriminated by willfully compensating Plaintiff, a female, less and by assigning her a lesser job title for substantially the same job duties performed by male employees, during her employment.

86.     Defendant had no legitimate reason for the disparity in compensation of female and male employees who performed substantially the same job duties.

87.     Defendant retaliated against Plaintiff after she opposed its discriminatory compensation and asked for equal compensation and treatment compared with male directors who performed substantially the same job duties she performed.

88.     As a result of Defendant's violation of the Equal Pay Act and anti-discrimination in compensation laws, Plaintiff has been harmed by receiving substantially less compensation than male colleagues who performed substantially the same job duties.

89.     As a result of Defendant's unlawful retaliation for Plaintiff's protected activities, Plaintiff was wrongfully discharged and will seek relief for her resulting loss of earnings, benefits, plus interest, damages to her professional reputation, and emotional distress.

90.     Plaintiff seeks injunctive relief to prevent Defendant from continuing to violate the anti-discrimination laws.

91.     Plaintiff seeks recovery of her attorneys' fees and costs.

<u>**Claim Three**</u>

**Violations of Arizona Civil Rights Act**

92.     Plaintiff incorporates all other paragraphs of this Complaint as though fully set forth herein.

93.     The Arizona Civil Rights Act ("ACRA"), A.R.S. §§ 41-1461, *et seq.*, prohibits discrimination in employment based on sex.

94.     The ACRA provides at A.R.S. § 41-1463(B)(1), that it is unlawful for an employer:

> To fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to the individual's compensation, terms, conditions or privileges of employment because of the individual's race, color, religion, sex, age or national origin or on the basis of disability.

95.     The ACRA also prohibits retaliation against an employee for opposing or taking other protected actions under the Act.

96.     Defendant engaged in unlawful discrimination based on sex and treated

Plaintiff less favorably than her male colleagues.

97.     Defendant discriminated against Plaintiff in unfair workplace criticisms, lack of support, undermining her work and recommendations, and assigning her to a significantly lesser job title and substantially less compensation than male co-workers.

98.     Defendant discriminated and retaliated against Plaintiff after she complained to her supervisors of unfair treatment, title and compensation.

99.     Defendant took adverse employment actions based upon Plaintiff's sex and discharged her after she took protected activities and opposed the discriminatory workplace treatment.

100.    Defendant then hired a less qualified male employee at a higher job title and substantially more compensation to replace Plaintiff and perform the same job.

101.    Defendant is liable for its unlawful discrimination and retaliation and liable to make Plaintiff whole, providing compensatory damages and equitable relief, including back pay, front pay, and lost employee benefits, plus interest.

102.    As a result of Defendant's violations, it is liable to compensate Plaintiff for damages suffered including emotional distress, harm to reputation and career, loss of enjoyment of life, and interest.  Plaintiff also seeks recovery of her reasonable attorneys' fees and costs.

**<u>Claim Four</u>**

**Violation of Arizona Employment Protection Act, A.R.S. § 23-1501**

103.    Plaintiff incorporates all previous paragraphs as though fully set forth herein.

104.    Under the Arizona Employment Protection Act (AEPA), an employee has a claim against her or his employer for wrongful termination of employment where the termination violates an Arizona statute. A.R.S. § 23-1501(A)(3).

105.    Arizona law, A.R.S. § 23-1501(A)(3)(c)(ii), prohibits an employer from terminating an employee in retaliation for:

> the disclosure by the employee in a reasonable manner that the employee has information or a reasonable belief that the employer, or

an employee of the employer, has violated, is violating or will violate the Constitution of Arizona or the statutes of this state to either the employer or a representative of the employer who the employee reasonably believes is in a managerial or supervisory position and has the authority to investigate the information provided by the employee and to take action to prevent further violations of the Constitution of Arizona or statutes of this state … .

106. Arizona common law prohibits fraud and the comprehensive statutory and regulatory scheme prohibits fraud in connection with insurance applications or renewals. *E.g.*, A.R.S. § 20-463.

107. Plaintiff reasonably reported to Defendant managers with authority to investigate and respond the information that Defendant had misclassified some employees in the past and that further misclassifications would violate Arizona and other states' laws that require truthful submission of information for insurance purposes.

108. After Plaintiff reasonably reported her concerns about violation of state laws, Defendant retaliated against Plaintiff by becoming angry, more critical, and setting her up for failure.

109. After Plaintiff's reports of her reasonable belief that Defendant was violating or would violate the Arizona state law and the law of other states, Defendant retaliated by discharging her.

110. As a result of the Defendant's violation of Plaintiff's rights under the AEPA, Plaintiff has suffered lost wages, benefits, and damages , in an amount to be proven at trial.

97. Plaintiff seeks to recover attorneys' fees and costs, pursuant to A.R.S. §§ 12-341, and 341.01, for actions arising out of the employment contract.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff requests Judgment in her favor on each legal claim and against the Defendant, as follows:

        A.     for compensatory damages to make her whole;

        B.     for back pay and lost benefits, with prejudgment interest;

        C.     for equitable relief of front pay;

D.      for equitable relief of reinstatement to an equivalent rightful position;

E.      for equitable relief enjoining Defendant from unlawful employment practices and ordering Defendant to institute policies and train its personnel to provide equal employment opportunities and to prohibit discrimination and retaliation in the workplace;

F.      for punitive damages to the extent permitted by law, for Defendant's malicious and willful conduct;

G.      for attorneys' fees and costs;

H.      for interest on any judgment from the date of entry of judgment until paid in full; and

I.      for any other damages or remedies the Court deems just and reasonable.

## REQUEST FOR JURY TRIAL

Plaintiff demands a jury trial on all matters set forth herein that may be submitted to a jury.

DATED this 31st day of March 2021.

YEN PILCH ROBAINA & KRESIN PLC


By    /s/ Phil S. Flemming
        Phil S. Flemming
        Attorneys for Plaintiff